# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00469-CR

**James Michael Reser, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 12-0702-K277, HONORABLE RICK J. KENNON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant James Michael Reser guilty of aggravated assault with a deadly weapon, *see* Tex. Penal Code § 22.02(a)(2), and unlawful restraint with exposure to a substantial risk of serious bodily injury, *see id.* § 20.02(c)(2)(A). The jury assessed punishment at 15 years' imprisonment for the aggravated assault and 10 years' imprisonment for the unlawful restraint, and the trial court ordered the sentences to run concurrently. In six points of error, Reser contends that the evidence was insufficient to support his convictions and the jury's affirmative deadly-weapon finding, that the trial court erred in denying his motion for an instructed verdict, and that the trial court abused its discretion in excluding evidence offered by the defense to impeach the complaining witness. We will affirm the trial court's judgments of conviction.

# BACKGROUND[1]

Reser and Amanda Taylor, the complaining witness, were in a relationship and had two children together. Reser, Taylor, their children, two of Reser's children from another relationship, and Taylor's mother were living together at the time of the offenses. Sometime before the date of the offenses, Taylor had filed a missing-person report because Reser had left the home and had not returned.

On the morning of April 28, 2012, Taylor returned home from work and entered her bedroom. Reser grabbed her unexpectedly from behind, struck her, and knocked her to the ground. He then pinned Taylor to the ground and stuck her multiple times in her arm with a syringe. Taylor called for help, and her mother came to see what was happening. When Taylor's mother saw Reser on top of Taylor, she left the home and called 911 from a neighbor's house.

Meanwhile, Taylor was able to push Reser off and knock the syringe out of his hand. Taylor found the syringe, pulled the plunger, dumped the contents, and disconnected the needle. Reser then barricaded himself, Taylor, and their two children in the room by placing furniture in front of the door.

The police arrived and began negotiating with Reser. The negotiations lasted almost an hour. While they were barricaded inside the room, Reser struck Taylor again. He also got a knife from the closet and began "playing" with it by pulling it in and out of its sheath. At one point, Reser told the officers, "I have my wife, my girls, and a gun."[2]

---

[1] The facts recited in this opinion are taken from the testimony and other evidence presented at trial.

[2] No gun was ever found.

Eventually, Reser surrendered to law enforcement and was taken into custody. Taylor received medical treatment and had swelling on the side of her head, redness on the upper part of her arms, and eight puncture wounds in her left arm. Reser was tried and found guilty, the trial court rendered judgments consistent with the jury's verdicts, and this appeal followed.

**STANDARD OF REVIEW**

In reviewing the sufficiency of the evidence to support a conviction, we determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Allen v. State*, 249 S.W.3d 680, 688–89 (Tex. App.—Austin 2008, no pet.). We view this evidence in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.* The jury may choose to believe all, some, or none of the witnesses at trial. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Walker v. State*, No. 03-14-00473-CR, 2016 WL 2942398, at *5 (Tex. App.—Austin May 10, 2016, pet. filed) (mem. op., not designated for publication). Therefore, we presume that the jury resolved any conflicting inferences and issues of credibility in favor of the judgment. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015); *Walker*, 2016 WL 2942398, at *5.

**DISCUSSION**

**Insufficient Evidence: Deadly Weapon**

In his first point of error, Reser contends that there was insufficient evidence to support the jury's determination that he used or exhibited a deadly weapon during the commission of the offenses.

A deadly weapon is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17). The re-indictment in this case alleged that Reser "used or exhibited a deadly weapon, namely, a knife and/or a syringe containing cocaine or an unknown substance" during the commission of aggravated assault and unlawful restraint. The court's charge instructed the jury to find Reser guilty of aggravated assault if, among other things, the jury determined that Reser "used or exhibited a deadly weapon, namely, a knife or a syringe containing cocaine or an unknown substance." The charge also presented a special issue asking the jury whether Reser "used or exhibited a deadly weapon, namely, a knife or a syringe containing cocaine or an unknown substance" during the commission of unlawful restraint. The jury found Reser guilty of both offenses and answered "Yes" to the special issue.

The State presented evidence that Reser barricaded himself, Taylor, and their two children in a room for almost an hour. During that time, Reser pulled a large knife in and out of its sheath in Taylor's view. In addition, Reser warned law enforcement not to come into the room because he did not want the situation to become "worse" and implied that he might hurt people if anyone tried to come into the room. This conversation between Reser and law enforcement took place in Taylor's presence. Moreover, at trial, the following exchange occurred:

4

[Prosecutor]: "You said that he was playing with [the knife]?"

[Taylor]: "Yes."

[Prosecutor]: "All right. And how was he playing with it?"

[Taylor]: "Kept pulling it in and out of the sheath."

[Prosecutor]: "And at this point, had you heard or did you know law enforcement was there on the scene?"

[Taylor]: "Yes."

[Prosecutor]: "And did you regard it[3] as threatening?"

[Taylor]: "Yes."

The trial court also admitted the knife itself into evidence. The knife had a partly serrated fixed blade approximately eight inches in length with a pointed tip.

Based on this evidence, a rational jury could have concluded beyond a reasonable doubt that Reser threatened Taylor with the knife and that the knife was "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury."[4] *See id.*; *see also Robertson*

---

[3] Even if the use of "it" is ambiguous, as Reser asserts, the jury could have concluded that Taylor meant that she found the knife threatening.

[4] Reser argues that the State was required to prove that one of the objects alleged as a deadly weapon was an object "that in the manner of its use or intended use is capable of causing death or serious bodily injury," *see* Tex. Penal Code § 1.07(a)(17)(B), because the jury charge's definition of deadly weapon did not include the definition, "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." *See id.* § 1.07(a)(17)(A). However, when examining the sufficiency of the evidence, we consider a hypothetically correct jury charge. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *DeLay v. State*, 410 S.W.3d 902, 907 (Tex. App.—Austin 2013), *aff'd*, 465 S.W.3d 232 (Tex. Crim. App. 2014). The re-indictment did not specify a definition for deadly weapon. Therefore, Reser was on notice that the State could prove either definition of deadly weapon, and a hypothetically correct jury charge would have included both definitions.

*v. State*, 163 S.W.3d 730, 734 (Tex. Crim. App. 2005) ("Because the switchblade knife was admitted into evidence, the fact-finder was in a position to observe all of these characteristics. Not only was this knife inherently dangerous, but it had no apparent purpose other than to serve as a deadly weapon."); *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.) ("The knife was admitted into evidence, and the jury was permitted to take it to the jury room and examine it. Consequently, testimony that the knife was capable of inflicting serious bodily injury or death was not required. A rational trier of fact could have found beyond a reasonable doubt that the knife, with its serrated edge, was capable of inflicting serious bodily harm.") (citations omitted). Therefore, we conclude that sufficient evidence supports the jury's deadly-weapon determination.[5] Accordingly, we overrule Reser's first point of error.

**Insufficient Evidence: Aggravated Assault**

In his second point of error, Reser contends that the evidence is insufficient to support his conviction for aggravated assault.

A person commits assault if the person "intentionally or knowingly threatens another with imminent bodily injury." Tex. Penal Code § 22.01(a)(2). A person commits aggravated assault

---

[5] Because we conclude that the evidence supports the determination that the knife Reser used or exhibited was a deadly weapon, we need not decide whether sufficient evidence supports a determination that the syringe was also a deadly weapon. *See Brooks v. State*, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999) ("When a jury returns a general guilty verdict on an indictment charging alternative theories of committing the same offense, the verdict stands if the evidence supports any of the theories charged."); *Miller v. State*, No. 03-07-00527-CR, 2010 WL 140390, at *6 (Tex. App.—Austin Jan. 13, 2010, pet. ref'd) (mem. op., not designated for publication) (same); *see also Jacobsen v. State*, 325 S.W.3d 733, 736 (Tex. App.—Austin 2010, no pet.) ("When alternative manners and means of committing an offense are submitted to a jury, it is appropriate for the jury to return a general verdict of guilty if the evidence supports a conviction under any one of them.") (citing *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991)).

6

if the person commits assault and "uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2). The re-indictment alleged that Reser "intentionally or knowingly threatened [Taylor] with imminent bodily injury and used or exhibited a deadly weapon . . . during the commission of the assault."

The State presented evidence that Reser attacked Taylor, struck her, stabbed her with a syringe, and then held her captive in her room for almost an hour. During that time, Reser moved a knife in and out of the sheath in a way that made Taylor feel threatened. As discussed above, the jury could have found this knife to be a deadly weapon. Reser mentioned the knife to law enforcement and implied that the situation could become "worse" if anyone tried to enter the room. He also struck Taylor again after they were barricaded. From this evidence, a rational jury could have concluded beyond a reasonable doubt that Reser threatened Taylor with the knife, a deadly weapon. Accordingly, we conclude that there was sufficient evidence to support Reser's conviction for aggravated assault, and we overrule his second point of error.

**Insufficient Evidence: Unlawful Restraint**

In his third point of error, Reser contends that there was insufficient evidence to support his conviction for unlawful restraint with exposure to a substantial risk of serious bodily injury.

A person commits unlawful restraint if the person "intentionally or knowingly restrains another person." *Id.* § 20.02(a). This offense is a third-degree felony if "the actor recklessly exposes the victim to a substantial risk of serious bodily injury." *Id.* § 20.02(c)(2)(A). The re-indictment alleged that Reser "intentionally or knowingly restrained [Taylor] . . . and recklessly

7

exposed [Taylor] to a substantial risk of serious bodily injury, namely, by injecting or attempting to inject [Taylor] with a syringe containing cocaine or an unknown substance and/or by threatening [Taylor] with a knife."

It is undisputed that Reser barricaded himself and Taylor in a room. The State presented evidence, including Taylor's testimony, that Taylor was not able to leave the room. Reser thereby restrained Taylor's movements without her consent. As discussed above, the State presented evidence that Reser threatened Taylor with a knife. The State also presented evidence that Reser stabbed Taylor multiple times with a syringe. The syringe later tested positive for cocaine. An expert witness testified that even a recreational dose of cocaine can cause a heart attack and death. Although Reser may not have known that a single dose of cocaine can be deadly, we conclude that, by injecting a controlled substance into a struggling person against her will, Reser consciously disregarded an unjustifiable risk that he might cause Taylor serious bodily injury. *See id.* §§ 6.03(c) (defining "reckless" conduct), 1.07(a)(46) (defining "serious bodily injury"). This risk was increased by Reser's refusal to allow Taylor to leave and receive medical treatment. Viewing this evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Reser restrained Taylor and recklessly exposed her to a substantial risk of serious bodily injury. Accordingly, we conclude that there was sufficient evidence to support Reser's conviction for unlawful restraint with exposure to a substantial risk of serious bodily injury, and we therefore overrule his third point of error.

**Instructed Verdict**

In his fourth point of error, Reser contends that the trial court erred in denying his motion for an instructed verdict.[6] Reser argues that the trial court should have granted the motion because the evidence was insufficient to support a deadly-weapon determination, the evidence was insufficient to support a determination that Reser threatened Taylor with imminent bodily injury, and the evidence was insufficient to support a finding that Reser recklessly exposed Taylor to a substantial risk of serious bodily injury while restraining her. In essence, Reser's fourth point of error merely reasserts the arguments made in his previous points of error. As discussed above, we have already rejected his challenges to the sufficiency of the evidence to support the jury's findings of guilt and deadly-weapon determination. Accordingly, we overrule Reser's fourth point of error.

**Exclusion of Evidence**

In his fifth point of error, Reser contends that the trial court abused its discretion in excluding evidence that Reser offered to discredit or impeach Taylor's testimony. Reser offered evidence that, after the commission of the offenses and Reser's arrest, Taylor tried to cause Reser to violate the terms of a protective order by driving near to Reser and then calling the police. Reser also offered evidence that, after the offenses, Taylor sent him nude photographs and messages indicating that she wanted to "get back together" with Reser and that she was sorry for the way events had unfolded. The trial court sustained the State's objection to the evidence concerning

---

[6] "We treat a point of error complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence." *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).

Taylor's alleged attempt to cause Reser to violate the protective order. In doing so, the court commented, "[G]iven the fact that this incident is after the fact of the assault, if it has any relevance, it's—or if it has any probative value, it's clearly outweighed by the prejudicial value and runs the risk of opening up other doors." Although the trial court never actually stated that it was sustaining the State's objection to the photographs and messages, the court refused to admit the evidence and commented, "[A]gain—if it has any probative value, it's outweighed by the prejudicial value. It's after the fact."[7]

Even if we were to assume without deciding, for purposes of our analysis, that the trial court abused its discretion in excluding this evidence, we must disregard any such error unless it affected Reser's "substantial rights." *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "[A]n appellate court may not reverse for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict." *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). "Where the error did not influence the jury or had but a slight effect, substantial rights are not affected." *Cantos v. State*, No. 03-14-00585-CR, 2016 WL 691012, at *2 (Tex. App.—Austin Feb. 19, 2016, no pet.) (mem. op., not designated for publication) (internal quotation marks omitted).

---

[7] We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Jessop v. State*, 368 S.W.3d 653, 666 (Tex. App.—Austin 2012, no pet.). "Such rulings will rarely be disturbed by an appellate court." *Id.* We will uphold the trial court's decision "unless it lies outside the zone of reasonable disagreement," and "[i]f the record supports the trial court's decision . . . there is no abuse of discretion." *Id.*

10

Even if the trial court had admitted this evidence, it would, at most, have shown that Taylor could be deceptive and that she wanted to continue her relationship with Reser despite the events giving rise to the charges against him. However, even if this evidence were to call Taylor's truthfulness and motives into question, additional evidence confirmed much of what happened during the commission of the offenses. Taylor's mother saw Reser attacking Taylor. Police spoke with Reser during the negotiations, and Reser confirmed that he had barricaded the room, that he had a knife, and that the situation might become "worse" if anyone tried to enter the room. The knife and syringe were admitted into evidence. The evidence also showed that Taylor sustained injuries during the encounter.

In light of this additional evidence, we cannot conclude that the trial court's exclusion of evidence concerning events that allegedly happened after the commission of the offenses had "a substantial and injurious effect or influence" on the jury's verdict. *See Schmutz*, 440 S.W.3d at 39. Therefore, any error the trial court may have committed in excluding this evidence was harmless. Accordingly, we overrule Reser's fifth point of error.

**Factual-Sufficiency Review**

In his sixth and final point of error, Reser contends that the evidence was factually insufficient to support his convictions. However, the court of criminal appeals has instructed that Texas appellate courts do not perform factual-sufficiency reviews of the evidence supporting criminal convictions. *See Brooks*, 323 S.W.3d at 895; *see also Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011) ("We do not review the factual sufficiency of the evidence to support a jury's finding on the elements of a criminal offense that the State is required to prove beyond a

11

reasonable doubt."); *Hoyt v. State*, No. 03-15-00228-CR, 2016 WL 4272104, at *5 (Tex. App.—Austin Aug. 12, 2016, no pet. h.) (mem. op., not designated for publication) (noting that this Court does not review evidence supporting convictions for factual sufficiency). Reser's argument that "even today . . . there is a purpose and reason for factual-sufficiency review" is better addressed to the court of criminal appeals. In light of precedent from this Court and from the court of criminal appeals, we overrule Reser's sixth point of error.

## CONCLUSION

We affirm the judgments of conviction.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed: October 25, 2016

Do Not Publish

12